UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

FREDERICK DYE,                                    CIVIL NO. 15-2790 (SRN/JSM)

     Petitioner,

v.

DENESE WILSON, Warden,

     Respondent.

_____

MALEK RAFATI,                                     CIVIL NO. 15-2601 (SRN/JSM)

     Petitioner,

v.

DENESE WILSON, Warden,

     Respondent.

_____

TED HULSLANDER,                                   CIVIL NO. 15-2815 (SRN/JSM)

     Petitioner,

v.

DENESE WILSON, Warden,

     Respondent.

_____

REPORT AND RECOMMENDATION

JANIE S. MAYERON, United States Magistrate Judge

     The above matter came before the undersigned United States Magistrate Judge upon Petitioner Frederick Dye's Petition under 28 U.S.C. 2241 For Writ of Habeas Corpus [Civ. No. 15-2790 (SRN/JSM) Docket No. 1]; Petitioner Malek Rafati's Petition under 28 U.S.C. 2241 For Writ of Habeas Corpus [Civ. No. 15-2601 (SRN/JSM) Docket No. 1]; and Petitioner Ted Hulslander's Petition under 28 U.S.C. 2241 For Writ of

Habeas Corpus [Civ. No. 15-2815 (SRN/JSM) Docket No. 1].  Petitioners, who appear pro se, allege that the Federal Bureau of Prisons ("BOP") violated their right to due process when 41 days of good conduct time were revoked after disciplinary proceedings.  The three petitions arise out of the same incident.

These matters have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, the Court recommends that the Petitioners' habeas corpus petitions be **DENIED**.

## I.    BACKGROUND

The Petitioners are presently incarcerated at the Federal Correctional Institution at Sandstone ("FCI-Sandstone"), however, their allegations stem from an incident that occurred while they were imprisoned at FCI-Oxford, Wisconsin.  Declaration of Ernie Lafferty ("Lafferty Dye Decl.", ¶ 7 [Civ. No. 15-2790, Docket No. 7]; Lafferty Rafati Decl., ¶ 7 [Civ. No. 15-2601, Docket No. 9]; Lafferty Hulslander Decl., ¶ 7 [Civ. No. 15-2815, Docket No. 9]).[1]

Petitioner Frederick Dye is serving an 84-month aggregated term of imprisonment with five years of supervision for Intent to Distribute More than Fifty Grams of Cocaine Base, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1).

---

[1]    Lafferty is employed by the Federal Bureau of Prisons as a Discipline Hearing Officer and was the Disciplinary Hearing Officer ("DHO") in all three cases.  Lafferty Dye Decl., ¶¶ 1, 2; Lafferty Rafati Decl., ¶¶ 1, 2; Lafferty Hulslander Decl., ¶¶ 1, 2. As Lafferty's Declaration filed in the three cases is virtually identical, the Court labels each declaration with the name of each of the three cases.

Lafferty Dye Decl., ¶ 7, Ex. B (Public Information Inmate Data).[2]  Dye has a projected release date of June 28, 2017, via a good conduct time release.  Id.

Petitioner Malek Rafati is serving a 192-month aggregated term of imprisonment and five years of supervision for Conspiracy to Possess with the Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 841(b) and 846.  Lafferty Rafati Decl., ¶ 7, Ex. B (Public Information Inmate Data).  Rafati was sentenced on November 14, 2012, and has a projected release date of May 20, 2023, via good conduct time release. Id.

Petitioner Ted Hulslander was originally sentenced to a 233-month term of imprisonment and was resentenced to 101 months for Conspiracy to Manufacture, Distribute, and Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  Lafferty Hulslander Decl., ¶ 7, Ex. B (Public Information Inmate Data).  Hulslander has a projected release date of August 31, 2018, via good conduct time release.  Id.

The Petitioners lost good conduct time following the discovery of a nut driver tool covered by a blanket on a chair in the common area of their cell.  Lafferty Dye Decl., ¶ 9; Lafferty Rafati Decl., ¶ 9; Lafferty Hulslander Decl., ¶ 9.  The tool was discovered when an officer conducted a search at approximately 12:30 p.m. on September 16, 2014.  Id.  The search was conducted because a pair of earbuds was found near an emergency exit and an MP-3 player was found outside the window of inmates Dye,

---

[2]      Lafferty stated that Dye had received an 84-month sentence, but the Public Information Inmate Data attached to his declaration stated that Dye was sentenced to a 144 month aggregated term of imprisonment, and that he was sentenced on September 28, 2006.  Lafferty Dye Decl., Ex. B.

Hulslander, Rafati, and Michael George's[3] cell.  Id., Ex. D (Incident Reports).  The nut driver recovered was of the size that would remove the nuts from the registers in the hallways and bathrooms, and from the heat ducts in the ceiling.  Id.

The Petitioners were given copies of Incident Reports between 9 and 10 p.m. on September 16, 2014.  Id. The Incident Reports stated that the Petitioners were in possession of a nut driver in violation of Code 108, Possession, Manufacture, Introduction or Loss of Hazardous Tool.  Id.  The BOP tool accountability process requires inmates to have advance permission to possess the tool, to use the tool for a specific repair, and to then return the tool.  Lafferty Dye Decl., ¶ 17; Lafferty Rafati Decl., ¶ 21; Lafferty Hulslander Decl., ¶ 17.

Petitioners were advised of their rights when the Incident Reports were delivered to them and each denied any knowledge of or involvement with the nut driver.  Upon receiving the incident report, Dye said, "I don't know who it belongs to, it's not mine." Lafferty Dye Decl. ¶ 10, Ex. D.  Rafati acknowledged possession of other goods in the cell, but stated, "the tool isn't mine."  Lafferty Rafati Decl.¶ 14, Ex. D.  Hulslander stated, "I didn't even know about the tool, I was at work." Lafferty Hulslander Decl., ¶ 10, Ex. D.

Petitioners had an initial hearing on September 18, 2014, conducted by a Unit Discipline Committee ("UDC").  Lafferty Dye Decl., ¶ 11; Lafferty Rafati Decl., ¶ 11;

---

[3]    The District Court has already considered and denied George's habeas corpus petition arising out of same incident.  George v. Wilson, Civ. No. 15-3349 (WMW/JJK), 2016 WL 1726531 (D. Minn. Mar. 21, 2016), report and recommendation adopted, No. 15-CV-3349 (WMW/BRT), 2016 WL 1698281 (D. Minn. Apr. 27, 2016).  George's Petition contended that Lafferty improperly characterized the tool as hazardous and sought the expungement of the violation from his record and the restoration of 41 days of lost good conduct time.  Petition For Habeas Corpus Relief, Civ. No. 15-3349 (WMW/JJK) [Docket No. 1]).  George accepted responsibility for possessing the tool. Id., p. 2.

Lafferty Hulslander Decl., ¶ 11.  Again, the Petitioners denied any culpability.  Id.  The UDC referred the case to the DHO for further evaluation. Lafferty Dye Decl., Ex. D; Lafferty Rafati Decl., Ex. E; Lafferty Hulslander Decl., Ex. D. As their cellmate George had already claimed responsibility for the nut driver, the UDC recommended the DHO expunge the violation from Petitioners' records if the DHO found them not guilty.  Id. Furthermore, Petitioners were advised of their rights (1) to have a written copy of the charges; (2) to have a full-time staff member represent them before the DHO; (3) to call witnesses and to present evidence; (4) to present a statement or to remain silent without the silence being used as an inference against them; (5) to be present throughout the discipline hearing, except during deliberations; (6) to be advised of the DHO's decision, the facts supporting the decision, and the DHO's disposition in writing; and (7) to appeal the DHO's decision through the administrative remedy procedures. Lafferty Dye Decl., ¶ 11, Ex. E (Inmate Rights at Discipline Hearing); Lafferty Rafati Decl., ¶ 11, Ex. F (same); Lafferty Hulslander Decl., ¶ 11, Ex. E (same).  The Petitioners declined to exercise their rights to have a staff representative, to call witnesses or to submit evidence. Lafferty Dye Decl., ¶ 11, Ex. F; Lafferty Rafati Decl., ¶ 11, Ex. G; Lafferty Hulslander Decl., ¶ 11, Ex. F.

DHO Lafferty conducted a disciplinary hearing on September 25, 2014. Lafferty Dye Decl., ¶ 12; Lafferty Rafati Decl., ¶ 16; Lafferty Hulslander Decl., ¶ 12.  Petitioners again denied knowing that the tool was in their cell.  Lafferty Dye Decl., ¶ 13, Ex. G; Lafferty Rafati Decl., ¶ 17, Ex. H; Lafferty Hulslander Decl., ¶ 13, Ex. G.  Based on the Petitioners' statements, staff memoranda, and a photograph of the tool, Lafferty concluded that the Petitioners had violated Code 108.  Lafferty Dye Decl., ¶ 14, Ex. G

(Discipline Hearing Officer Report); Lafferty Decl., ¶ 18, Ex. H (same); Lafferty Hulslander Decl., ¶ 14, Ex. G (same).  Lafferty sanctioned the Petitioners by disallowing 41 days of good conduct time and imposing a 90-days loss of telephone, e-mail, and visitation privileges.  Id.  Lafferty determined that the greater weight of evidence supported the Code 108 violation.  Lafferty Dye Decl., ¶ 15, Ex. G; Lafferty Rafati Decl., ¶ 19, Ex. H; Lafferty Hulslander Decl., ¶ 15, Ex. G.  Lafferty concluded that the tool was found in the common area of the cell and that all inmates assigned to the cell were responsible for its presence. Id.  Furthermore, despite George claiming responsibility for the tool, Lafferty found his confession to be non-credible because in his experience, inmates are often coerced into confessing so other inmates can avoid punishment. Lafferty Dye Decl., ¶ 16, Ex. G; Lafferty Rafati Decl., ¶ 20, Ex. H; Lafferty Hulslander Decl., ¶ 16, Ex. G.  Lafferty also cited the lack of corroborating evidence to tie the tool solely to George; George could not provide a basic description of the tool, even after he had read his own incident report.  Id.  Lafferty noted that the nut driver was a hazardous tool as it could be used to access air vents, which could be appropriated to store contraband used in an escape attempt or to the detriment of staff or inmate safety. Lafferty Dye Decl., ¶ 17, Ex. G; Lafferty Rafati Decl., ¶ 21, Ex. H; Lafferty Hulslander Decl., ¶ 17, Ex. G.

## II.   HABEAS CORPUS PETITIONS AND RESPONSES

The Petitioners sought the restoration of their lost good conduct time and expungement of the Incident Report from their records.  The Petitioners generally argued that they were denied due process because the DHO's findings failed to meet

the "some evidence" standard.   Dye Petition, p. 2; Rafati Petition, p. 3; Hulslander
Petition, p. 2.

### A.   Dye Petition

Dye contended that the DHO's findings were not supported by "some evidence"
for the following reasons.  First, the area in which the tool was found was accessible to
any of the 170 inmates in the dormitory, yet "only four were arbitrarily charged."  Dye
Petition, p. 2.  Second, the DHO incorrectly concluded that the tool was found in the
common area[4] because it was found on George's "assigned chair" under his prayer rug.
Id.  Dye contended that prison policy states that areas assigned to other inmates were
not within the scope of his living area and it was not his responsibility to keep George's
area free of contraband.  Third, the DHO's decision was a wholly conclusory opinion not
supported by any direct evidence and contradicted by George's confession.  Id.  Fourth,
the DHO erred in concluding that there was no corroborating evidence to support
George's confession.  Id., pp. 2-3.  According to Dye, the fact that the tool was found on
George's chair under his prayer rug was sufficient corroborating evidence.  Id., p. 3
(citing Ex. I to Petition (June 12, 2015, Affidavit of Michael George stating that he was
solely responsible for the tool and was not influenced or coerced into confessing)).
Lastly, the DHO's finding that that all inmates were responsible for keeping their area
free of contraband was incorrect – George is an orderly for the unit and often performed
small housekeeping chores.  Id., p. 3.  As a result, Dye would not have known whether

---

[4]      The Court notes that this argument seems to be at odds with Dye's statement
that the tool was found in an area accessible to 170 inmates.

the tool was properly in George's possession in connection with these chores, or whether it was contraband. Id.

For all of these reasons, Dye contended that the DHO's decision did not meet the "some evidence standard."[5]

### B.   Rafati Petition

Like Dye, Rafati also argued that the DHO erred with respect to George's confession. Rafati Petition, pp. 3-5. Rafati contended that George's confession was reliable and was supported by a myriad of corroborating evidence. Id. Furthermore, Rafati contended that Code 108 was void for vagueness. Rafati Petition, pp. 6-8. Arguing in the alternative, Rafati disputed whether a nut driver could even be classified as a hazardous tool under Code 108. Rafati Petition, pp. 5-6.

### C.   Hulslander Petition

Hulslander's Petition is a nearly verbatim copy of Dye's Petition and did not advance any arguments not set forth by Dye.

### D.   Respondent's Response to Petitions

Respondent Warden Denese Wilson sought the denial and dismissal of the three Petitions, contending that the Petitioners had been provided all the due process to which they were entitled. Respondent's Response to Dye Petition ("Resp. to Dye Pet.") [Civ. No. 15-2790, Docket No. 6]; Respondent's Response to Rafati Petition ("Resp. to Rafati Pet.") [Civ. No. 15-2601, Docket No. 8]; Respondent's Response to Hulslander Petition ("Resp. to Hulslander Pet.") [Civ. No. 15-2815, Docket No. 8]. As to all three Petitions, Respondent contended that the Petitioners received notice of the charges

---

[5]    Dye described these arguments without elaboration in a one-page Memorandum of Law he submitted with his petition. See Memorandum of Law [Docket No. 1].

against them, an opportunity to call witnesses and present evidence, and a written statement by the DHO—all of which satisfy the requirements described by Wolff v. McDonnell, 418 U.S. 539, 555-58 (1974) for a prison disciplinary process to pass constitutional muster.  Resp. to Dye Pet., pp. 7-9; Resp. to Rafati Pet., pp. 7-9; Resp. to Hulslander Pet., pp. 7-9.

Respondent rejected the Petitioners' claims that the DHO's decisions were not based on "some evidence."  Resp. to Dye Pet., pp. 9-15; Resp. to Rafati Pet., pp. 9-15; Resp. to Hulslander Pet., pp. 9-15.  Respondent submitted that the "some evidence" standard is met when there is "'some evidence from which the conclusion of the administrative tribunal could be deduced.'"  Id. (citing Walpole v. Hill, 472 U.S. 445, 455 (1985)).  Pursuant to Hill, "some evidence" includes: (1) statements or testimony, or (2) a written account of the incident or an incident report.  Id.  In determining whether "some evidence" supports the discipline, the reviewing court does not assess the credibility of the evidence relied upon and once the court determines that there is "some evidence" to support the DHO's findings, the court should reject any evidentiary challenges by a petitioner and uphold the DHO's findings.  Resp. to Dye Pet., p. 10; Resp. to Rafati Pet., p. 10; Resp. to Hulslander Pet., p. 10.

Applying these standards, Respondent argued that the DHO had evidence that the tool was a "hazardous tool" within the meaning of Code 108 based on the report of the staff member who discovered the tool and described it as the correct size for removing nuts from air vents and heat ducts throughout the prison.  Resp. to Dye Pet., p. 11; Resp. to Rafati Pet., p. 11; Resp. to Hulslander Pet., p. 11 (citing Lafferty Decls., Ex. D at 5 (incident reports)).  As the tool could be used to store contraband in the air

vents and heat ducts to avoid detection by prison staff, Respondent submitted that the DHO established that the tool was a hazardous tool because it "poses a serious threat to the orderly operation and security of the institution." Id. (citing Lafferty Dye Decl., Ex. G (DHO report); Lafferty Rafati Decl., Ex. H (same); Lafferty Hulslander Decl., Ex. G (same)).  The DHO's finding on this issue should not be disturbed because it was not plainly erroneous or inconsistent with the regulation.  Resp. to Dye Pet., pp. 11-12 (citing Ramos v. Fisher, Civ. No. 13-1059 (ADM/HB), 2014 WL 5206716, at *10 (D. Minn. Oct. 14, 2014)); Resp. to Rafati Pet., pp. 11-12 (same); Resp. to Hulslander Pet., pp. 11-12 (same).

As to Petitioners' arguments that an inmate cannot be charged with possession of contraband when another inmate has claimed responsibility, Respondent argued that the DHO's finding that George's admission of ownership was not credible was based on a lack of corroborating evidence.  Resp. to Dye Pet., p. 12; Resp. to Rafati Pet., p. 12; Resp. to Hulslander Pet., p. 12.   The DHO specifically cited George's inability to describe the tool, despite the fact that the tool was described in the incident report issued to George.  Id. (citing Lafferty Dye Decl., ¶ 16; Lafferty Rafati Decl., ¶ 20; Lafferty Hulslander Decl., ¶ 16).   Respondent rejected Petitioners' suggestion that as the tool was found on George's chair, under his prayer rug, this corroborated George's statement that he was responsible for the tool.  Resp. to Dye Pet., pp. 12-13; Resp. to Rafati Pet., pp. 12-13; Resp. to Hulslander Pet., pp. 12-13.  Respondent pointed out that George's sworn statement only described the tool as being wrapped in a blanket (not under his prayer rug) and described the location of the tool as "a chair" not "his chair."  Id., (citing Dye Pet., Ex. I (Second George Aff.); Hulslander Pet., Ex. I (same)).

As to Petitioners' arguments that because the tool was found in a common area, the DHO could not conclude that the tool belonged to any of them individually, Respondent submitted that courts have relied on collective culpability for contraband found in shared areas as "some evidence" to support disciplinary action.  Resp. to Dye Pet., pp. 13-14 (citing Flowers v. Anderson, 661 F.3d 977, 980-81 (8th Cir. 2011); Mason v. Sargent, 898 F.2d 679, 680 (8th Cir. 1990); Scott v. Fondren, Civ. No. 09-762 (RHK/JJG), 2009 WL 3855926, at *2 (D. Minn. Nov. 17, 2009)); Resp. to Rafati Pet., pp. 13-14 (same); Resp. to Hulslander Pet., pp. 13-14 (same).  Respondent noted that the BOP's security procedures provide that inmates are responsible for keeping their cells free of contraband.  Resp. to Dye Pet., p. 14 (citing Dye Pet., Ex. A (excerpt of BOP Security Procedures policy); Lafferty Dye Decl., ¶ 16); Resp. to Rafati Pet., p. 14 (citing Lafferty Rafati Decl., ¶ 19); Resp. to Hulslander Pet., p. 14 (citing Hulslander Pet., Ex. A (excerpt of BOP Security Procedures policy); Lafferty Hulslander Decl., ¶ 16).  As a result, some evidence in the record supported the DHO's decision.

Respondent rejected Rafati's contention that Code 108 was void for vagueness. Resp. to Rafati Pet., p. 7.  As to Rafati's alternative argument that that tool should not be classified as a "hazardous tool" under Code 108, Respondent replied that the BOP's tool accountability procedures require inmates to obtain staff permission to possess the tool, which is to be used for a specific task and returned.  Id., p. 11 (citing Lafferty Rafati Decl., ¶ 21).   Therefore, "an inmate of common intelligence should know that accountable tools are by their nature hazardous to institution security."  Id.

Petitioners' requests to the contrary, Respondent stated that there was no need for an evidentiary hearing because the issues may be resolved on the basis of the

record.  Resp. to Dye Pet., p. 15; Resp. to Rafati Pet., p. 15; Resp. to Hulslander Pet., p. 15.

The Petitioners submitted replies to Respondent's responses to their petitions. See Dye Traverse [Docket No. 9]; Rafati Reply [Docket No. 11]; Hulslander Traverse [Docket No. 11].

Dye attacked Lafferty's declaration and asserted that Lafferty was biased and pre-decided the Petitioners' guilt long before the hearing.  Dye Traverse, pp. 2-3.[6]  Dye also contended that the Eighth Circuit cases cited by Respondent for collective culpability were distinguishable because none of them involved contraband found in an open area to which over 100 inmates had unrestricted access.  Id.  Additionally, the tool was found on George's "assigned" chair, which corroborates his confession.  Dye also cited extra-jurisdictional cases in which courts have found that the "some evidence" standard was not met when there are multiple inmates with equal access to an area. Id., p. 5 (citing Broussard v. Johnson, 253 F.3d 874, 877 (5th Cir. 2001); Hamilton v. O'Leary, 976 F.2d 341, 345-46 (7th Cir. 1992); Cardendas v. Wiggins, 921 F. Supp. 286, 289 (D. Pa. 1996)).  Additionally, the concept of "collective culpability" only applies when a specific offender cannot be identified.  Id.  Here, George confessed to possession of the tool.  Id.  Dye also challenged Respondent's citation to the concept of "constructive possession" in reference to collective culpability, contending that extending the "some evidence" standard to constructive possession would make

---

[6]    The Court is referring to the page numbers assigned through the District Court's CM/ECF system as Dye did not number the pages of his brief.

enforcement of the BOP's rules arbitrary and capricious and a violation of due process. Id., pp. 5-6.[7]

Dye sought an evidentiary hearing to determine facts he claimed were contested, such as whether the chair on which the tool was found was George's "assigned" chair and whether the tool was hidden among George's personal belongings.  Id., p. 6.

Rafati also contended that the DHO was biased and pre-decided his guilt.  Rafati Reply, p. 2.  Rafati submitted that the DHO made no credibility determinations before finding Rafati guilty; as a result, the DHO's conclusion that George "may" have been coerced has no evidentiary support.  Id.  Additionally, Rafati denied that there was a lack of corroborating evidence for George's confession, pointing to the fact that the tool was found in a widely-accessible area, George was questioned initially before any opportunity for coercion, and George was found credible.  Id., p. 3.  Rafati also argued that the DHO failed to "research" the charges properly and had he done so, he would have known that the BOP classifies a nut driver as a "nonhazardous" tool pursuant to BOP regulations.  Id.

Hulslander's Traverse is a nearly verbatim copy of Dye's Traverse.  Hulslander Traverse [Docket No. 11].

## II.    DISCUSSION

Depriving an inmate of good conduct time for disciplinary reasons "implicates a liberty interest that is protected by the Due Process Clause."  Espinoza v. Peterson, 283

---

[7]     Respondent had argued that "[o]ne court has likened 'collective culpability' to constructive possession" where all members of a group can be held responsible for an offense when the specific offender cannot be identified."  Resp. to Dye Pet., p. 14.  The Court did not construe this reference to mean that Respondent was relying on a theory of constructive possession; only that collective culpability is analogous to constructive possession.

F.3d 949, 951-52 (8th Cir. 2002), cert. denied, 537 U.S. 870 (2002) (citing Wolff v. McDonnell, 418 U.S. 539, 555-58 (1974)).  A prisoner cannot be deprived of good-time credits without being afforded at least some procedural due process protections.  Wolff, 418 U.S. 539, 556.  However, a prisoner facing a loss of good-time credits is not entitled to the full panoply of procedural safeguards that attend a criminal prosecution.  Id.  To satisfy the Constitutional requirement of due process, a prison disciplinary action must satisfy the procedural requirements prescribed in Wolff.  That is, prisoners facing a loss of good conduct time must be given (1) advance written notice of the charges, (2) an opportunity to present witness testimony and other evidence, and (3) a written explanation of the ultimate resolution of the charges.  Id. at 561.  See also Espinoza, 283 F.3d at 951-52, (applying Wolff requirements); Allen v. Reese, 52 Fed. Appx. 7, 8 (8th Cir. 2002) (unpublished opinion) (holding that federal prisoner's right to due process was satisfied, as he was given (i) written notice of the charges against him, (ii) the right to call witnesses, and (iii) a written report of the DHO's decision), cert. denied, 540 U.S. 849 (2003)).

Due process also requires that there must be "some evidence" supporting the disciplinary determination.  Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445, 454 (1985).  A reviewing court will not reassess the credibility of witnesses or re-weigh the evidence.  Gomez v. Graves, 323 F.3d 610, 612 (8th Cir. 2003).  Rather, a reviewing court's only inquiry is whether there is some evidence to support the sanction. Id.  The "some evidence" standard does not mandate examination of the entire record to satisfy due process.  Espinoza, 283 F.3d 949 at 952.  Rather, "[d]ue process requirements are satisfied if some evidence—that is, any evidence in the record—

14

supports the disciplinary decision." <u>Rudd v. Sargent</u>, 866 F.2d 260, 262 (quoting <u>Hill</u>, 472 U.S. at 455–56.). The findings of a prison disciplinary officer cannot be overturned even where the supporting evidence "might be characterized as meager," or wholly circumstantial. <u>Hill</u>, 472 U.S. at 457. "Simply stated, where there is at least some evidence to support the hearing officer's decision, and the disciplinary action is not wholly insupportable, the requirements of due process are met." <u>George v. Wilson</u>, 2016 WL 1726531, at *4-5.

As a preliminary matter, this Court finds that Petitioners were afforded the procedural benefits prescribed by <u>Wolff</u>, and notes that Petitioners did not claim otherwise. Petitioners were given written notice of the charges against them; they were advised of their rights by a staff member; they was given a hearing and an opportunity to have a staff member represent them and present evidence at that hearing; and they were given written summaries of the DHO's findings. Lafferty Dye Decl., ¶¶ 9-12; Exs. D (Incident Report dated September 16, 2014), E (Inmate Rights at Discipline Hearing dated September 18, 2014 and signed by Dye), F (Notice of Discipline Hearing); G (Discipline Hearing Officer Report signed by Dye on October 2, 2014); Lafferty Rafati Decl., ¶¶ 9-16, Exs. E (Incident Report dated September 16, 2014), F (Inmate Rights at Discipline Hearing dated September 18, 2014 and signed by Rafati), G (Notice of Discipline Hearing), H (Discipline Hearing Officer Report signed by Rafati on October 2, 2014); Lafferty Hulslander Decl., ¶¶ 9-12, Exs. D (Incident Report dated September 16, 2014), E (Inmate Rights at Discipline Hearing dated September 18, 2014 and signed by Hulslander), F (Notice of Discipline Hearing), G (Discipline Hearing Officer Report signed by Hulslander on October 2, 2014).

Despite these safeguards, Petitioners argued that their due process rights were violated because the DHO's decision was not based on "some evidence."  This Court disagrees and concludes that the "some evidence" standard was met in this case for the following reasons.

First, Lafferty's decision to classify the tool as a hazardous tool pursuant to Code 108 was based on evidence in the Incident Reports, where a staff member indicated that the tool was the right size to remove nuts from registers in the wings, hallways, bathrooms and heat ducts, allowing access to those areas.  Lafferty Dye Decl., Ex. D; Lafferty Rafati Decl., Ex. E; Lafferty Hulslander Decl., Ex. D.  Another court in this District has already considered whether the tool was properly classified as "hazardous" in connection with George's habeas corpus petition:

> Petitioner simply claims that the DHO improperly classified the nut driver as a Class A "hazardous" tool, rather than a Class B "non-hazardous" tool, as generally defined under BOP Program Statement 5500.13, Correctional Services Procedural Manual, Chapter 2, Section 201 (Reply, Ex. A), and as expressly provided in FCI–Oxford, Wisconsin Institution Supplement 5513.15L, Tool Control.  Respondent, on the other hand, contends that a nut driver is classified as a Class B tool only if proper procedures for access to the tool, as provided in Supplement 5513.15L, are followed (Lafferty Decl. ¶ 17).  Otherwise, the tool may be classified as a hazardous tool for disciplinary purposes. In his declaration in support of this case, the DHO, Ernie Lafferty, described how possession of a Class B non-hazardous tool like a nut driver can trigger a Code 108 violation:
>
>> The nut driver is classified as a Class B tool according to the Institution Supplement, as long as the access procedures in the Supplement are followed. Class B tools are 'less hazardous,' but not completely non-hazardous. The BOP's tool accountability procedures do not allow just any inmate to possess a Class B tool. The inmate must have staff permission to possess the tool, to use the Class B tool on a specific repair, and then promptly return it. All tools must be

16

accounted for on a regular basis, and if any tools are missing, the inmates responsible for the tools are written an incident report for a Code 108 violation. The Bureau implemented these accountability procedures because an inmate's use, or even mere possession, of a Class B tool without staff supervision enables him to engage in fraudulent and unmonitored acts, such a storing contraband in air vents. Such acts could be used to secretly coordinate a prison escape or engage in other activity that is hazardous to prison security or the safety of staff or inmates. There was no indication [Petitioner] possessed the nut driver through these accountability procedures.

(Lafferty Decl. ¶ 17)

***

The Petitioner's right to due process with respect to disciplinary proceedings was not violated as a result of the DHO classification of the nut driver as a hazardous tool.

George, 2016 WL 1726531, at *3, 4. Lafferty provided similar information in connection with the instant Petitions. Lafferty Dye Decl., ¶ 17; Lafferty Rafati Decl., ¶ 21; Lafferty Hulslander Decl., ¶ 17.

At the end of the day, "[t]he [BOP's] interpretation of its own regulation prohibiting possession of a hazardous tool is controlling unless it is plainly erroneous or inconsistent with the regulation." Ramos, 2014 WL 5206716, at *10 (citations omitted). The DHO report explained that the tool was hazardous to prison security and its possession was a Code 108 violation. This is sufficient to meet the "some evidence" standard and consistent with the Court's determination in George that the DHO did not improperly characterize the tool.

Second, the Petitioners are incorrect that they cannot be held liable for contraband found in a common area. The Eighth Circuit has repeatedly found multiple inmates liable for contraband found in shared areas. See Flowers, 661 F.3d at 980

17

(upholding punishment for two inmates held liable for weapons found stashed above the door to their cell); Mason, 898 F.2d at 679 (upholding discipline of inmate who was punished for contraband pajamas found in his locker, while his cellmate had access to it and confessed to placing the contraband there).   Additionally, the Eighth Circuit "[has] accepted a collective responsibility theory" when contraband is found in the shared area of a cell.  Flowers, 661 F.3d at 980.

In any event, Petitioners' argument that the area in which the tool was found was accessible by "hundreds" of other inmates is unsupported by any evidence and is irrelevant.  The incident reports stated that the tool was found "while shaking down cell 7 and 8 occupied by Inmate George. . . Dye. . . Rafati. . . and Hulslander.  Although afforded an opportunity to rebut this statement, none of the Petitioners did so. According to the DHO, "all inmates assigned to the cell are responsible for ensuring their cell is free of contraband."  Lafferty Dye Decl., Ex. D; Lafferty Rafati Decl., Ex. E; Lafferty Hulslander Decl., Ex. D.

Third, the DHO stated that for George's confession to be deemed credible, there must be corroborating evidence in conjunction with the admission and in this case, there was not.  Lafferty Dye Decl., Ex. D; Lafferty Rafati Decl., Ex. E; Lafferty Hulslander Decl., Ex. D.  The DHO cited the fact that h could not give a basic description of the nut driver as some evidence that his confession was not credible.  Lafferty Dye Decl., ¶ 16; Lafferty Rafati Decl., ¶ 20; Lafferty Hulslander Decl., ¶ 16.  The Court concludes that this finding regarding George's confession was supported by "some evidence" and, therefore, the Petitioners were not deprived of their due process rights when the DHO found George's confession to be non-credible.

Fourth, the Court rejects Petitioner Rafati's argument that Code 108 is void for vagueness.  In the context of prison regulations, some courts have applied a relaxed version of the vagueness doctrine.

> Due process undoubtedly requires certain minimal standards of specificity in prison regulations, but we reject the view that the degree of specificity required of regulations is as strict in every instance as that required of ordinary criminal sanctions. This results from the fundamental difference between normal society and prison society. The maintenance of strict security and discipline, with its unfortunate but unavoidable circumscription of an inmate's freedom to act, is essential to safe and efficient prison administration. As such, it is nearly impossible for prison authorities to anticipate, through narrowly drawn regulations, every conceivable form of misconduct which threatens prison security.

Wolfel v. Morris, 972 F.2d 712, 717 (6th Cir. 1992) (citation omitted).

Moreover, federal courts defer to the interpretation of those rules by prison authorities, "unless fair notice was clearly lacking." Adams v. Gunnell, 729 F.2d 362, 369 (5th Cir. 1984) (quotation omitted).

Here, Petitioners were on notice that the possession of hazardous tools, that could most likely be used in an escape or escape attempt, was prohibited. Further, it is readily apparent that the BOP could classify a tool such as a nut driver, which can be used to remove heating vents, as a "hazardous tool" under Code 108.  See Patel v. Zenk, 447 Fed. Appx. 337, 340 (3rd Cir. 2011) ("We are not persuaded that Code 108 is unconstitutionally vague . . . additionally, Patel has not demonstrated that Code 108 authorizes or encourages arbitrary and discriminatory enforcement."); Robinson v. Warden, 250 F. App'x 462, 464 (3d Cir. 2007) ("Code 108 is not unconstitutionally vague on its face.").

Lastly, the Court rejects Dye's and Hulslander's argument that an evidentiary hearing is needed.  The Court finds the record sufficient for its determination, and an evidentiary hearing is unnecessary.  <u>See</u> <u>Shelton v. Ciccone</u>, 578 F.2d 1241, 1245 (8th Cir. 1978) (stating that a court must grant an evidentiary hearing "[w]hen the facts alleged in a habeas petition would justify relief if true, or when a factual dispute arises as to whether or not a constitutional right is being denied").

For all of the reasons stated above, it is recommended that Petitioners' Petitions should be denied and their cases dismissed with prejudice.

## IV.    RECOMMENDATION

Based on the foregoing,

**IT IS HEREBY RECOMMENDED** that Petitioner Frederick Dye's application for habeas corpus relief under 28 U.S.C. § 2241 [Docket No. 1] be **DENIED** and this matter be **DISMISSED** with prejudice.

**IT IS HEREBY RECOMMENDED** that Petitioner Malek Rafati's application for habeas corpus relief under 28 U.S.C. § 2241 [Docket No. 1] be **DENIED** and this matter be **DISMISSED** with prejudice.

**IT IS HEREBY RECOMMENDED** that Petitioner Ted Hulslander's application for habeas corpus relief under 28 U.S.C. § 2241 [Docket No. 1] be **DENIED** and this matter be **DISMISSED** with prejudice.

Dated:  June 9, 2016                    *Janie S. Mayeron*
                                        JANIE S. MAYERON
                                        United States Magistrate Judge

### NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing**.**  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.